Joan A. **SHAWLEY,** et al., Plaintiffs,

v.

**BETHLEHEM STEEL CORPORATION,**
Defendant.

Civ. A. No. 89–51J.

United States District Court,
W.D. Pennsylvania.

March 5, 1992.

William T. Payne, Pittsburgh, Pa., for plaintiffs.

G. Daniel Carney and Joseph Mack, II, Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Plaintiffs Joan A. Shawley, William Calaboyias, James Vogel, and Paul Percherke filed a complaint on behalf of themselves and all other persons similarly situated against defendant Bethlehem Steel Corporation. Plaintiffs are approximately 762 current or former members of United Steelworkers of America Local Union No. 2635, who worked during the 1970's at the former Freight Car Division of the Bethlehem Steel Corporation in Johnstown, Pennsylvania. Plaintiffs claim that Bethlehem Steel Corporation violated Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140, which provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or *discriminate* against a participant or beneficiary ... for the purpose of interfering with the attainment of *any right* to which such participant *may become entitled* under [an employee benefit] plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. (emphasis added).

Plaintiffs do not allege any discharge, fine, suspension, expulsion, or discipline by Bethlehem Steel Corporation. Rather, they allege that Bethlehem Steel Corporation discriminated against them by refusing to rehire them after a layoff because it did not wish to incur increased pension liability.

Bethlehem Steel Corporation has filed a motion to dismiss or for summary judgment which has been fully briefed and ar-gued. Because it appears that plaintiffs' complaint fails to state a claim for which this court can grant relief, defendant's motion to dismiss is granted.

## I.

### A.

In considering Bethlehem Steel Corporation's motion to dismiss, it is necessary to determine whether beyond doubt plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Saporito v. Combustion Engineering*, 843 F.2d 666, 670 (3d Cir.1988), *vacated on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989). It is also necessary to remember that this court is not a court of general jurisdiction, and can only grant relief if Congress has given it the power to do so. *Hughes v. General Motors Corp.*, 852 F.2d 568 (table), 1988 1988 WL 72742, *1–2, U.S.App.Lexis 9637, *3–4 (6th Cir.1988). It is necessary to determine: (1) whether Congress, in enacting Section 510 of ERISA, 11 U.S.C. § 1140, made it unlawful for Bethlehem Steel Corporation to "discriminate" by refusing to rehire former Freight Car Division employees; and (2) whether such former employees are "participants" within the coverage of the statute.

### B.

Accepting plaintiffs' allegations as true, it appears that:

(1) Bethlehem Steel Corporation operated the Freight Car Division in Johnstown, Pennsylvania, during the 1970's and 1980's, and employed hundreds of members of the United Steelworkers of America Local Union No. 2635. Plaintiffs were laid off in 1979 and 1980 during one of the cyclical downturns in the domestic steel industry. Both the named plaintiffs and the proposed class of plaintiffs had been employed under the terms of a collective bargaining agreement which provided that Bethlehem Steel must recall them in order of seniority up to a maximum of five years layoff. Thereafter, employees had no contractual prefer-

ence in any rehiring to be done by Bethlehem Steel.

(2) The Bethlehem Steel Corporation sponsored a pension plan subject to the funding and disclosure requirements of ERISA entitled the Pension Plan of Bethlehem Steel Corporation and Subsidiary Companies (Plan), under the Pension Agreement between Bethlehem Steel Corporation and United Steelworkers of America (Agreement). Complaint, Exhibit "A". Plaintiffs' credit toward a pension under the Plan is based on the number of years of credited continuous service. *See* Plan, Section 2.1—2.9. Under Section 5.1 of the Plan, for an employee who is laid off for more than two years, the layoff breaks an employee's accrual of years of continuous service if the number of years that an employee has been laid off exceeds the number of years of credited continuous service prior to the layoff. *See* Complaint ¶ 13. *See also* 29 U.S.C. § 1053(b)(3)(D)(i). If an employee who was laid off is rehired before the length of the layoff exceeds the length of prior credited continuous service, i.e., years worked plus two,[1] and completes one additional year of continuous service, the years of prior service are counted toward an application for a pension. Plan, Section 5.1(c).

Plaintiffs and the proposed plaintiff class were laid off for more than two years, and so had periods of prior continuous service under the Plan equivalent to the number of years worked before the layoff plus two years. *See* Complaint ¶¶ 7–10.

(3) Because of provisions in the collective bargaining agreement which limited laid off employee's recall rights to five years, all of the plaintiffs suffered breaks in service by 1986.

(4) In 1987 Bethlehem Steel Corporation expected an upturn in business resulting in increased orders and decided to hire hundreds of employees. Representatives of the United Steelworkers Union met with representatives of Bethlehem Steel Corporation to promote the rehiring of laid off employees who because of their break in service had no contractual right to recall, but who possessed the particular skills sought by Bethlehem Steel Corporation because of their prior experience.

(5) Bethlehem Steel Corporation determined that it would not hire former employees because it did not want to incur the employees' pension liabilities. Specifically, in negotiations with the Union, Bethlehem Steel representatives stated that rehiring employees would probably result in some employees acquiring ten years of service under the Plan and thereby vesting, which would cost Bethlehem Steel Corporation $16,000 per employee, and other employees acquiring twenty years of service, which would cost Bethlehem Steel Corporation $185,000 per employee.

(6) Bethlehem Steel Corporation proceeded to hire new employees in 1987 and 1988, while refusing to consider laid off employees for all but a very few positions. Bethlehem Steel Corporation pursued this approach in its dealings with the Pennsylvania Job Service, and expressly stated to personnel of the Job Service that it did not plan to rehire former employees because of the potential pension liability. Even after reaching an informal agreement to consider former employees, Bethlehem Steel Corporation actively excluded qualified former employees from serious consideration for employment.

## II.

The plaintiffs assert that Bethlehem Steel Corporation's rehiring practices plainly violate Section 510's prohibition of discrimination against participants or beneficiaries of an employee benefit plan. Clearly the actions taken by Bethlehem Steel Corporation constitute discrimination in the commonly accepted sense of the word, that is, the act of making distinctions or perceiving differences between individuals or groups. It is necessary, however, to consider not only whether plaintiffs are participants and beneficiaries, but first whether

---

**1.** This feature of the pension plan, standard in industry, is referred to as a "creeping benefit" provision. *See Deeming v. American Standard, Inc.,* 905 F.2d 1124, 1126 (7th Cir.1990).

discrimination in hiring is discrimination prohibited by ERISA.

### A.

Plainly, the words of the statute prohibit discharging, fining, suspending, expelling or disciplining employees to interfere with their pension rights or potential pension rights. Just as plainly, the words of the statute do not expressly prohibit refusals to hire an employee based on consideration of the employee's potential economic cost and benefit to the employer. If the word "discriminate" were interpreted to cover refusals to hire, it would render the other terms of the statute superfluous, because unquestionably fines, expulsions, and discharges are actions that can be equally discriminatory. Further, in considering other employment related remedial legislation by Congress, it appears that when discrimination in hiring was sought to be addressed by Congress, language expressly covering hiring is used. *See e.g.* 42 U.S.C. 2000e–2(a) (unlawful "to fail or refuse to hire") (Title VII); 29 U.S.C. § 623(a)(1) (same) (ADEA); 29 U.S.C. § 158(a)(3) (unfair labor practice to discriminate "in regard to hire or tenure of employment") (NLRA); 42 U.S.C. 12112(a) ("No covered entity shall discriminate ... in regard to job application procedures, [or] hiring ...") (ADA of 1990).

### B.

Examination of the legislative history of ERISA likewise suggests that the chief evil to be addressed by Section 510 was discriminatory discharges. The history also shows a lack of congressional intent to reach hiring practices.[2] *See e.g.,* 119 Cong. Record 30044 (wherein Senator Javits, in reference to the provision that became § 510, states that "... I have included an express amendment on that score which would provide a remedy for any person *fired* such as

is provided for a person *discriminated* against because of race or sex, for example"), *reprinted in* Subcomm. on Labor, Senate Comm. on Labor and Public Welfare, *Legislative History of the Employee Retirement Income Security Act of 1974* (Legislative History) (1976), 1641 (emphasis added). *See also,* 119 Cong. Record 30374, *reprinted in* Legislative History at 1774–75 (Senator Hartke discussed § 510, alluding to its intended protection of employees not covered by collective bargaining agreements that would "protect employees against *discharge* without good cause") (emphasis added); remarks of Senator Javits at presentation of Conference Report, reprinted in Legislative History at 4753 (stating, in reference to § 510, that "[e]very employee is to have the right ... to be free from interference with his pension benefits. This means he cannot be discharged, fired, suspended, expelled or otherwise interfered with....."). *See generally Lojek v. Thomas,* 716 F.2d 675, 680–81 (9th Cir.1983); *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980).

### C.

Nor has judicial interpretation expanded the meaning of "discriminate" to include refusals to hire. To the contrary, *West v. Greyhound Corp.,* 813 F.2d 951, 955 (9th Cir.1987), held that the purchaser of assets of a corporation did not violate ERISA by refusing to hire employees of the former corporation because they refused to accept reductions in pension benefits provided in the former collective bargaining agreement. None of the cases cited by either party hold that a refusal to hire, based solely on the employer's concern for the economic impact of the hire, is actionable under ERISA. This issue appears to be one of first impression in this Circuit, and was expressly left open by the Court of Appeals in a case involving layoffs of em-

---

**2.** Justice Scalia has described the pitfalls of excessive reliance on the minutiae of legislative history. *See e.g. Blanchard v. Bergeron,* 489 U.S. 87, 97–100, 109 S.Ct. 939, 946–947, 103 L.Ed.2d 67 (1989) (Scalia, J. concurring in the judgment). The examination of legislative history, however, serves as a useful check on the

plain reading of the statutory text in an attempt to integrate it into the "surrounding body of law." *See Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 527–530, 109 S.Ct. 1981, 1994–1995, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring in the judgment).

ployees, *Gavalik v. Continental Can Co.*, 812 F.2d 834, 854–55 n. 34 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).

### III.

■ If Section 510's prohibition against discrimination can be interpreted to include refusals to hire, plaintiffs have standing to bring an action if and only if they are participants or beneficiaries of the Plan established by the Agreement. The Act does not confer standing on every person affected by prohibited activity. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 25, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983); *McKinnon v. Blue Cross and Blue Shield of Alabama,* 935 F.2d 1187, 1193–94 (11th Cir.1991). The Act defines a participant as

> any employee or *former employee* of an employer ... who is or *may become eligible* to receive a benefit of *any* type from an employee benefit plan which covers employees of such employer....

29 U.S.C. § 1002(7) (emphasis added). There is no claim that plaintiffs are beneficiaries under the Plan or suffered discrimination because they were beneficiaries. Plaintiffs claim that they are participants as defined in 29 U.S.C. § 1002(7) because they are "former employees" who "may become eligible to receive a benefit of any type." *Id.* Because there is no dispute that plaintiffs are former employees, the focus must be on the meaning of *"may become eligible to receive a benefit."* [3]

Plaintiffs argue that they are participants because they may become eligible to receive a benefit in two ways. First, they may become eligible because until the length of the break in service exceeds the length of their prior credited service, they become eligible for a pension based on their prior service if they are rehired and bridge their service by completing an additional year. Plaintiffs secondly assert that they may become eligible because the Plan, if terminated, must pay them their nonvested forfeitable benefits. *See* 29 C.F.R. § 2618.-

16, interpreting 29 U.S.C. § 1344(a)(6) and 26 U.S.C. § 411(d)(3).

### A.

Plaintiffs' second example does not support a conclusion that they are participants. Of course, no plan termination is at issue here, but if a plan termination were to occur, 26 U.S.C. § 411(d)(3) provides for distribution to "affected employees," not to "participants." The other provision cited by plaintiffs, 29 U.S.C. § 1344(a)(6), "does not create benefit entitlements," *Mead Corporation v. Tilley,* 490 U.S. 714, 722–25, 109 S.Ct. 2156, 2162–63, 104 L.Ed.2d 796 (1989); it merely provides a scheme for allocating existing benefits. If plaintiffs are not participants, plan termination or the possibility thereof does not make them so.

### B.

Plaintiffs' argument that they are participants because they may have bridged their break in service if they had been rehired, and may have become entitled to a benefit, requires examination of the test for standing announced by the Supreme Court in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989):

> In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (CA2 1985), or former employees who "have ... a reasonable expectation of returning to covered employment" or have "a colorable claim" to vested benefits, *Kuntz v. Reese,* 785 F.2d 1410, 1411 (CA9) (per curiam), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). In order to establish that he "may become eligible for benefits," a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

---

3. Plaintiffs also reason that they are participants because they are nonvested participants under

29 U.S.C. § 1053(b)(3)(D)(iii). This argument assumes the conclusion as one of its premises.

"This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' " *Saladino v. I.L.G.W.U. National Retirement Fund,* supra at 476.

Do the plaintiffs have a "reasonable expectation of returning to covered employment"? Neither *Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986), *cert. denied,* 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986), nor *Saladino v. I.L.G.W.U. Nat'l Retirement Fund,* 754 F.2d 473 (2d Cir.1985), provide a definition of the phrase used, because neither involved a plaintiff who intended to return to employment. The plaintiff in *Saladino* was a 67 year old retiree who wanted to obtain a pension from employment he left 13 years earlier, 754 F.2d at 475–76; in *Kuntz,* the plaintiffs had retired and received a lump sum distribution of benefits. 785 F.2d at 1410. Nor is plaintiffs' citation of *Saporito v. Combustion Engineering, Inc.,* 879 F.2d 859 (1989), on remand from *Combustion Engineering, Inc. v. Saporito,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), *vacating Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666 (3d Cir.1988), apposite. Judge Becker therein specifically refrained from ruling on the question of standing; that matter, furthermore, involved employees who alleged they had been tricked into early retirement with lower benefits. None of the plaintiffs alleged that they sought reemployment. *See* 843 F.2d at 668–70.

Plaintiffs argue that they had a reasonable expectation of returning because they were experienced in the very occupational skills sought by Bethlehem Steel Corporation. For purposes of defendant's motion, it is legally proper (and reasonable in fact) to conclude that the plaintiffs were well-qualified to return to work. However, I hold that a hope or expectation that because of qualifications one will be selected by an employer is not equivalent to a reasonable expectation of employment. Unless the conclusion that Bethlehem Steel Corporation could not take plaintiffs' potential pension liability into account is assumed, plaintiffs' acquired experience was but one of the factors weighed in the hiring decision.

Plaintiffs had no statutory right to be rehired, nor any contractual right to be rehired because of the expiration of their right to be recalled. For purposes of the collective bargaining agreement, they had no more reasonable expectation of employment than any other applicant. It would be paradoxical to hold that the pension plan provisions gave them more. For a reasonable expectation of returning to employment to exist, there must be a claim of right on the part of the former employee to return to work. *See e.g. Berger v. Edgewater Steel Co.,* 911 F.2d 911, 921–22 (3d Cir.1990) (employees wrongfully constructively discharged would have standing as participants without necessity of actually returning to work; however, no standing where employees retired and showed no intent to return to work), *cert. denied,* — U.S. —, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Zydel v. Dresser Industries,* 764 F.Supp. 277, 283 (W.D.N.Y.1991) (members of USWA who had collective bargaining rights to be rehired were participants); *Baeten v. Van Ess,* 474 F.Supp. 1324, 1330–31 (E.D.Wis.1979) (economic strikers with rights to be recalled under 29 U.S.C. § 152(3) until they obtain regular work with another company have standing to bring action under Section 510). By comparison, in *Winchester v. Pension Committee,* 942 F.2d 1190 (7th Cir.1991), an employee who after discharge received her pension distribution was held not to be a participant under ERISA even where reinstatement was sought as relief in a suit challenging the discharge. The Fifth Circuit, in *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1223 (5th Cir.1992) relying on *Berger v. Edgewater Steel Co.,* held that, if wrongfully discharged, employees who sought reinstatement as relief could be participants for purposes of a Section

510 action. However, it also appears that the Fifth Circuit used the "standing is based on a claim of standing" approach specifically rejected by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch.* The approach taken by the Seventh Circuit in *Winchester v. Pension Committee* reflects the better reasoning.

### IV.

This construction of "participant" is in accord with the purpose of ERISA. To hold that former employees such as the plaintiffs are participants would drastically and unpredictably enlarge the number of persons entitled under ERISA to, *inter alia,* disclosure of plan descriptions, even though these persons would have *no* expectation of receiving benefits or returning to employment unless the employer made the business decision to rehire additional employees and those former employees chose to reapply for employment.[4] Such a reading would reduce the amount of plan resources available to actual beneficiaries of the Plan for no purpose intended by Congress. *See Saladino,* 754 F.2d at 476.

Defendant's motion to dismiss is granted. The motion for certification as a class action is denied as moot.

---

**4.** It is also worthy of note that, although the Pension Benefit Guaranty Corporation's definition is not controlling or intended to be universal, *see* 47 Fed.Reg. 27,328, the PBGC would exclude plaintiffs from the definition of participant. 29 C.F.R. § 2510.3-3(d)(3)(i) states:

In the case of an employee pension benefit plan, an individual who, under the terms of the plan, has incurred a one year break in service after having become a participant covered under the plan, and who has acquired no vested right to a benefit before such break in service is not a participant covered under the plan until the individual has completed a year of service after returning to employment covered by the plan.

Their definition is based on a permissible construction of ERISA and is therefore entitled to some deference. *See Mead Corporation v. Tilley,* 490 U.S. at 722, 109 S.Ct. at 2162.