# R E V I S E D

United States Court of Appeals,

Fifth Circuit.

No. 96-60057.

ESTATE OF Golda E. Rixon KOKERNOT, Deceased,

Mary Ann Kokernot LACY, Executrix, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

May 27, 1997.

Appeal from the United States Tax Court.

Before REYNALDO G. GARZA, EMILIO M. GARZA and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

A decedent's estate appeals a judgment of the United States Tax Court holding that it waived its ability to elect special-use valuation for certain qualified property under I.R.C. § 2032A because it failed to raise the topic in its petition for review or during the negotiations that led to the filing of a stipulation of settlement with the Tax Court. We affirm.

I.

Golda E. Rixon Kokernot ("Decedent") died on December 7, 1990. Her daughter was named executrix of her estate. At the time of her death, Decedent partly owned a 103,843.21 acre cattle ranch in West Texas called the "Kokernot 06 Ranch" ("Ranch"), which property was includible in Decedent's estate ("Estate") for tax purposes. The

1

Ranch was composed of several parcels, one of which, the "Upper Ranch," is of import here. The executrix filed a federal estate tax return on September 7, 1991, reporting the date-of-death, fair-market value of the Upper Ranch as $2,142,456 and the value of the entire Ranch as $2,696,536. The return also included a Schedule A-1 "Section 2032A Valuation" on which the executrix made a protective election pursuant to IRS regulations in order to preserve its opportunity to specially value the Ranch, under § 2032A, by reference to its continued use as a working ranch.

The return was selected for audit, the principal issue being the fair market value for the Ranch. Because the parties were unable to resolve their differences at the audit level, the Commissioner proceeded to issue a notice of deficiency on June 9, 1994. The notice determined a deficiency of $3,443,931 in estate taxes. In the notice, the Commissioner valued the Upper Ranch at $7,863,001, causing, after other unrelated adjustments, a $5,720,545 increase in the value of the gross estate. The Estate's protective election of § 2032A valuation was not mentioned and the Commissioner's calculation of deficiency amounts did not take into consideration any offset for the property's use as a cattle ranch. Challenging the notice of deficiency, the Estate filed a petition in the United States Tax Court for a redetermination of the deficiency, alleging, *inter alia,* that the Commissioner erred in her finding of the date-of-death fair market value for the Ranch.

2

The Estate's petition did not mention the subject of § 2032A valuation.

The case was set for trial on June 19, 1995. At the suggestion of the court, the parties entered negotiations prior to trial to attempt to resolve the debate over the Ranch's fair market value at the time of Decedent's death. At no time during these negotiations was the subject of § 2032A valuation raised by the Estate. When the parties appeared for trial on June 19, counsel for the Commissioner announced that the parties had reached settlement on all issues raised in the notice of deficiency. On July 3, 1995, the parties filed a "Stipulation of Settlement" with the court. The agreement provides in relevant part:

> THE PARTIES HEREBY NOTIFY the Court that they have reached a basis of settlement concerning all adjustments to petitioner's estate tax return in respondent's statutory notice of deficiency, dated June 9, 1994.

> * * * * * *

> 2. The $5,720,545.00 increase in the value of real estate included a determination by respondent that petitioner under reported the reported fair market value per acre of the deceased's interest in 89,503 acres of an 103,843 acre cattle ranch. In addition, respondent determined that only 13,098 of the 89,503 acres of the ranch in dispute were subject to a partial ownership discount; and, that gifts made in 1990 pursuant to a durable power of attorney were invalid and, therefore, the value of the gifts should be included in the gross estate.

> 3. The parties stipulate to the following terms of settlement:

> a. With respect to the increase in the value of the real estate included in the gross estate, the issues were resolved as follows:

> i. The parties agree to value the entire 103,843 acres of

3

the cattle ranch at $80.00 per acre.

>       ii. In addition, the parties agree that petitioner is entitled to discount of 20% on the entire 103,843 acres to reflect the deceased's partial interest in the property.

*   *   *   *   *   *

The parties agree to this STIPULATION OF SETTLEMENT. Thus the stipulated value of the property, after the discount, was $64 per acre, or $6,645,952 for the entire Ranch. The agreement contains no reference to § 2032A valuation.

Based on this agreement, the court allowed the parties additional time in order to exchange information regarding various administrative expenses discussed elsewhere in the agreement, to compute the correct amount of estate tax due, and to prepare decision documents. After reviewing the agreed-upon value for the Ranch, the Estate's counsel advised counsel for the Commissioner that the Estate intended to pursue its protective election of special valuation and, on August 26, 1995, the Estate sent to the Commissioner an amended federal estate tax return in which it made the § 2032A election.

The parties thereafter filed motions for entry of a decision determining the deficiency, with the Commissioner seeking $889,910.20 and the Estate seeking $626,119.32. The Commissioner argued that the settlement reflected the parties' agreements with respect to all of the adjustments stated in the notice of deficiency and that it finally set a value to be attached to the Ranch for purposes of the calculation of the gross estate. It

4

further argued that a determination of the value of the property under § 2032A presented a new factual issue that could not be raised at this stage of the proceedings. The Estate argued that the Stipulation of Settlement encompassed only the issues raised in the notice of deficiency and not the *amount* of deficiency or its computation, that the application of § 2032A was merely a computational process, and that the Commissioner's failure to consider during settlement negotiations the possible impact of the Estate's protective election did not constitute a valid basis for denying the benefits of the election.

The court agreed with the Commissioner, finding that the Estate failed to preserve its claim to special-use valuation in the Stipulation of Settlement. It found that the Commissioner entered into the agreement (thereby foregoing the higher value for the Ranch determined in the notice of deficiency) on the premise that the "value" of the Ranch stated in the stipulation was its "value" for estate tax purposes. The Commissioner was entitled to make that conclusion, the court reasoned, because the Estate's counsel never mentioned the § 2032A election during the negotiations. Further, the Tax Court concluded that the question of whether the Estate was entitled to value the Ranch property under § 2032A was not merely computational but required the determination of several factual issues, none of which were mentioned in either the pleadings or the negotiations leading to the agreement. It refused

5

to allow the Estate to raise the issue at that point in the litigation and entered a decision in accordance with the Commissioner's figures. The Estate appeals.

II.

We review decisions of the Tax Court in the same manner we do those of a district court. We review its findings of fact for clear error but review its conclusions of law de novo. *Dresser Indus. v. Commissioner,* 911 F.2d 1128, 1132 (5th Cir.1990). Its interpretation of the terms of a settlement agreement is a legal conclusion. *Accord Goldman v. Commissioner,* 39 F.3d 402, 405 (2d Cir.1994).

The Estate's argument on appeal is that the agreement cannot be construed as effecting a waiver of its right to make the § 2032A valuation. It argues that it was legally privileged to raise the issue when it did. The Commissioner answers that the Tax Court correctly held that the Estate failed to preserve its right to value the Ranch under § 2032A.

We begin by analyzing the agreement itself. A settlement agreement is a contract; mutual forbearance supplies the consideration. As such, we interpret its terms using general contract law principles. *Treaty Pines Invs. Partnership v. Commissioner,* 967 F.2d 206, 211 (5th Cir.1992). If the language of the agreement is unambiguous, we will not consider any extrinsic evidence: the meaning will be determined from the terms

6

encompassed within the proverbial four corners of the agreement. *Goldman,* 39 F.3d at 406. Where the language is not so clear, however, we will examine the language within the context of the circumstances surrounding the execution of the agreement. *Robbins Tire & Rubber Co. v. Commissioner,* 52 T.C. 420, 435-436, 1969 WL 1677 (1969). Our examination of the language of the agreement leads us to conclude that the $64 per acre figure was meant to be the final figure, thereby foreclosing any use of special-use valuation. The agreement specifically states that "[w]ith respect to the increase in value of real estate included in the gross estate, ... the parties agree to value the entire 103,843 acres of the cattle ranch at" $64 per acre. The agreement does not refer to the *fair market* value of the Ranch, but to its value for estate tax purposes. While the language appears unambiguous to us, the Estate asserts that its true significance cannot be divined outside of the circumstances within which it was executed.

Central to the circumstances here is the topic of special-use valuation under I.R.C. § 2032A. The federal government ordinarily assesses estate tax on inherited real property by means of the property's fair market value. Section 2032A represents an exception to this general scheme by allowing a qualified agricultural property to be taxed at its actual-use value, *i.e.* its

7

value as an agricultural property.[1]  The purpose of the exception is "to grant relief to heirs of such properties who might otherwise find the financial burden imposed by the estate tax so great that it would be necessary to sell the farm or business to pay the tax." *McAlpine v. Commissioner,* 968 F.2d 459, 460 (5th Cir.1992). Applied here, it would allow the Estate to value the Ranch based on its use as a cattle ranch rather than at some higher value.  The Estate has calculated that the employment of § 2032A valuation to the amounts agreed to in the stipulation would result in a $750,000 reduction in value for the property.[2]  In exchange for this alternate method of property valuation, the successors must agree to maintain familial ownership and the agricultural nature of the property for a period of ten years.  The successors must also agree to assume personal responsibility for additional taxes should the two conditions be breached.  I.R.C. § 2032A(c).  The Code requires that this agreement be memorialized in a "recapture agreement" which must be submitted along with the tax return making the § 2032A election.  I.R.C. § 2032A(d)(2).

The benefits and obligations of this section "do not appertain automatically just because all prerequisites happen to

---

[1]*See* I.R.C. § 2032A(e)(7) (discussing the method of valuation).

[2]The Code provides that the aggregate decrease in value allowed "shall not exceed $750,000." I.R.C. § 2032A(a)(2). Absent this ceiling the Estate could claim a reduction in the vicinity of $1 million.

coalesce: The estate must act affirmatively to elect such treatment." *Estate of Hudgins v. Commissioner,* 57 F.3d 1393, 1397 (5th Cir.1995). The applicable regulations allow a taxpayer to make a "protective election" of special-use valuation and thereby preserve its right to elect the alternate method of valuation "pending final determination of values." 26 C.F.R. § 20.2032A-8(b). The notice of protective election must be made on the estate tax return. Once the values are "finally determined," the taxpayer has 60 days within which to make a full-blown election of special-use valuation on an amended tax return.

As noted above, the Estate gave notice on its original return that it was undertaking a protective election with respect to the Ranch. The Estate asserts that it made the *protective* election, rather than outright making the election, for strategic reasons. It states, and the Commissioner does not dispute, that it satisfies all the requirements set forth in § 2032A. However, at the fair-market value it provided on its original tax return, the savings allowed by § 2032A would have been "*de minimis* " and not worth the legal obligation the successors would undertake. Perhaps anticipating that the fair-market value of the Ranch would become a debated issue, the Estate made a protective election, thereby allowing it to take advantage of § 2032A valuation in the event that the finally determined fair-market value for the Ranch increased to the point where it would make economic sense for the

9

successors to incur the legal obligations described above.

The regulation states that the availability of the election "is contingent upon values as finally determined (or agreed to following examination of a return) meeting the requirements of section 2032A....  If it is found that the estate qualifies for special use valuation based upon values as finally determined (or agreed to following examination of a return)," the estate may then make the election on an amended return.  26 C.F.R. § 20.2032A-8(b).  The Estate seizes upon this language to justify its position.  It claims that its protective election preserved its opportunity to make the election whenever a final determination was made regarding fair-market value.  It asserts that the final determination was made in the settlement agreement.  Accordingly, it reasons that it then had 60 days to perfect its election.

The Commissioner has conceded that the Estate has otherwise met all the procedural niceties required for making the election.  She argues, however, that the Estate waived its opportunity to make the election after the matter proceeded past the audit stage and into litigation.  We agree.  We do not read the language in the regulation as broadly as the Estate does.  Under the Estate's interpretation, the final step in litigation over the Commissioner's determination of fair-market value establishes the date on which the 60-day period for making the election commences.  This final step might be the entry of a settlement agreement, as was the case here, or in another situation it might be the Tax

10

Court's ruling or that of a reviewing Article III court.

We do not believe this is what the regulation contemplates when it speaks to a final determination. Following the audit of a tax return, the Commissioner notifies the taxpayer of any disputes. The taxpayer is allowed an administrative appeal to resolve this preliminary determination. After the appeal is decided, the Commissioner then sends the taxpayer a notice of deficiency. I.R.C. § 6212(a). This notice constitutes the final administrative determination of the taxpayer's tax deficiency. Absent further action by the taxpayer, this decision is final. If the taxpayer decides to challenge this figure by lodging a petition for review in the Tax Court, it bears the burden of proving that the Commissioner's determination is incorrect. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *J. & O. Altschul Tobacco Co. v. Commissioner,* 42 F.2d 609, 610 (5th Cir.1930); Tax Ct. R. 142. We conclude the final determination contemplated by the regulations is the Commissioner's notice of deficiency.

If the Estate was content with the Commissioner's determination of fair-market value for the Ranch, as evidenced in the notice of deficiency, it was free at that point to take advantage of its protective election by filing an amended tax return which made the election. Because it chose to challenge the Commissioner's determination, the Estate should have raised the §

11

2032A issue in its petition for review.  As the Tax Court noted, the Estate was free to plead special-use valuation as an alternative position.  Tax Ct. R. 31(c).  It chose not to do so.  Instead, it attempted to raise the issue after entering an agreement which, as we interpret it, established a final value for the Estate.  We agree with the Tax Court that the Estate waived its ability to claim § 2032A valuation.[3]

AFFIRMED.

---

[3]The Commissioner's brief implies that the Estate might have preserved the issue by broaching the topic during the settlement negotiations in the Tax Court.  As a consequence, we need not determine whether the Estate's failure to make reference to special-use valuation in its petition for review would have been enough to waive the issue.