Vicki GONZALES, Plaintiff,

v.

COLUMBIA HOSPITAL AT MEDICAL
CITY DALLAS SUBSIDIARY, L.P.
Defendant.

No. CIV.A.3:01–CV–1287–P.

United States District Court,
N.D. Texas,
Dallas Division.

May 28, 2002.

John E. Wall, Jr., Attorney at Law, Laura Ellen Calhoun, Attorney at Law, Law Office of John E. Wall Jr., Dallas, for Vicki Gonzales, plaintiffs.

Sherri Turner Alexander, Attorney at Law, Matthew R Scott, Attorney at Law, Bell Nunnally & Martin, Dallas, for Columbia Hospital at Medical City Dallas Subsidiary LP, defendants.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are the following:

1. Plaintiff's Motion for Leave to File Plaintiff's Second Amended Original Complaint, with brief in support, filed December 3, 2001;

2. Defendant Medical City Dallas Hospital's Response to Plaintiff's Second Motion for Leave to Amend Her Federal Court Complaint, filed January 11, 2002; and

3. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to File Plaintiff's Second Amended Original Complaint, filed January 28, 2002.

After a thorough review of the parties' briefs and the applicable law, for the reasons set forth below, the Court concludes that Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint should be DENIED.

## BACKGROUND

Plaintiff Vicki Gonzales ("Plaintiff" or "Gonzales") filed this action against Defendant Medical City Dallas Hospital ("Medical City") on July 3, 2001, alleging discriminatory practices in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Pl.'s Orig. Compl. at 1–2. On July 31, 2001, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff's complaint failed to provide any specific factual support for her alleged ADA claims, and further failed to allege each element of her prima facie case. Def.'s Mot. to Dismiss and Br. in Supp. at 1. Plaintiff subsequently moved for leave to file an amended complaint, focusing almost exclusively on curing the defects as highlighted by the Defendant's motion to dismiss. Medical City ultimately withdrew its objection to Gonzales' First Motion for leave, and the Court ordered that Plaintiff's First Amended Original Complaint be filed on September 12, 2001.

Plaintiff, after conducting early discovery, once again sought leave to amend her complaint, this time to add causes of action against Medical City under the Employee Retirement Income Securities Act ("ERISA") and for breach of contract. Pl.'s Br. in Supp. of Pl.'s Mot. to File Pl.'s Second Am. Orig. Compl. ("Pl.'s Br.") at 1. Specifically, Gonzales asserts in her Second Amended Original Complaint that she was an employee of Defendant until her termination in March 1996, when she was forced to resign her position as a charge nurse and signed a release. Pl.'s Second Am. Orig. Compl. at ¶¶ 8, 22. Plaintiff alleges that as a condition of this release Defendant agreed that she would remain eligible for rehire. Id. at ¶¶ 9, 22. However, Plaintiff claims, she was repeatedly denied rehire by Defendant after reapplying for various positions of employment in June 1999, July 1999 and September 1999. Id. at ¶ 10.

Based on the agreement signed at her termination regarding her eligibility for rehire, Gonzales now states that she had a reasonable expectation of returning to work and of being covered under the insurance benefit plan. Id. at ¶ 22. Plaintiff asserts that Defendant was a fiduciary under the insurance plan within the meaning of ERISA, and as such, was responsible for discharging its duties solely in the interest of the plan participants and beneficiaries for the exclusive purpose of providing benefits in accordance with the documents and instruments governing the plan. Id. at ¶ 23. Therefore, Gonzales seeks to add a claim for Defendant's breach of this duty when it refused to rehire her for pretextual reasons and with the intent to deprive Plaintiff of her rights and benefits under the insurance plan. Id. at ¶ 23. Moreover, Gonzales claims Medical City discriminated against her in violation of 29 U.S.C. § 1140 when it refused to rehire her for previously exercising her rights under the employee benefit plan and for seeking healthcare benefits in connection with the treatment of her work related injuries. Id. at ¶ 24.

The second cause of action which Plaintiff seeks to add in her Second Amended Original Complaint is one for breach of the release contract she signed in connection with her termination in March of 1996. Id. at ¶ 25. More specifically, Gonzales argues that as a condition of this release Medical City agreed that she would remain eligible for rehire. Id. As she has reapplied for employment in jobs which she believed were available and for which she was qualified, it is Plaintiff's position that by refusing to rehire her Defendant has breached its obligation under the release agreement and she has suffered damages,

including lost wages and lost benefits as a result. Id.

Defendant argues that these additional claims for breach of contract and for ERISA violations brought by Plaintiff are patently frivolous and as such the Court should deny Plaintiff's second request for leave to amend. Def.'s Resp. to Pl.'s Second Mot. for Leave. ("Def.'s Resp.") at 2. These arguments shall be considered in turn.

## DISCUSSION

### I. Standard for Leave to Amend Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading "shall freely be granted when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision to grant leave to amend lies within the discretion of the trial court. However, in the context of motions to amend pleadings, "discretion" may be a misleading term because rule 15(a) severely restricts the court's freedom due to the bias in favor of granting leave to amend. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir.1981). The policy of the federal rules is to permit amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. *Id.* Thus, unless there exists a substantial reason for denying leave to amend, the district court should permit the filing of a proposed amendment. *Id.*

Nevertheless, the parties' ability to amend their pleadings is by no means unlimited. *See In re Southmark*, 88 F.3d 311, 315 (5th Cir.1996); *In re Circuit Breaker Litigation*, 175 F.R.D. 547 (C.D.Cal.1997). In determining whether to grant leave to amend, the court may consider several factors, including undue delay or prejudice to the non-movant, bad faith or dilatory motives on the part of the movant, repeated failure to cure deficiencies, and futility of amendment. *Foman*, 371 U.S. at 182.

The Court may deny a motion to amend if it concludes that the proposed amendment would be futile. *J.R. Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872–73 (5th Cir.2000). The Fifth Circuit has defined "futility" to mean that "the amended complaint would fail to state a claim upon which relief could be granted" and has further held that the legal standard developed under Rule 12(b)(6) guides this analysis. *Id.* at 873. In this context, the Court may not deny the motion for leave to amend "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations and citations omitted). The Court must render its decision taking the complaint in the light most favorable to the plaintiff and taking its allegations as true. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Moreover, the Court limits its inquiry to whether plaintiff is entitled to offer evidence to support claims and does not address whether plaintiff will ultimately prevail on the merits. *Johnson v. Dallas Ind. School Dist.*, 38 F.3d 198, 199 (5th Cir.1994). Nonetheless, dismissal shall still be proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir.1986).

### II. Plaintiff's Breach of Contract Claim

Gonzales' Second Amended Original Complaint purports to advance a claim for breach of contract arising out of the "Compromise and Settlement Agreement" signed between the parties at the time of

her resignation in March of 1996. App. Def.'s Br., Exh. A2. The language ·upon which Plaintiff relies essentially states:

"In consideration of the payment of ... Twenty thousand dollars ($20,000.00), the sufficiency and receipt which is hereby acknowledged, has been tendered to the undersigned, Vicki Gonzalez (hereinafter 'Recipient'), paid by Medical City Dallas Hospital (hereinafter 'Company') and which Recipient acknowledges as reasonable and sufficient consideration ... Recipient does hereby release and forever discharge Company ... from any and all claims or causes of action of any kind whatsoever ... now existing or that might arise hereinafter, directly or indirectly attributable to any occurrence ... relat[ing] to any occurrences prior to the date of the signing of this Agreement which is March 7, 1996.

...

Recipient understands that her treating physician has provided documentation to Company stating that she is no longer capable of performing the essential functions of the job as a Registered Nurse; that Company has determined no reasonable accommodation exists as established by law and; therefore Recipient further understands, that she is no longer eligible for employment with. Company.

As required by law, Medical City Dallas Hospital will offer an equal opportunity for re-employment to Recipient for any position which she applies and is capable of performing the mental and physical essential functions. Such equal opportunity for re-employment will be given without consideration of any previous occurrence with which Recipient may have been involved."

Id., Exh. A2 at 1–2. Defendant argues that this settlement agreement was not a contract for employment capable of being

breached when it failed to re-hire Plaintiff. *See* Def.'s Br. at 6.

 Under Texas law, a settlement agreement is a contract subject to the same rules of construction as other contracts. *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 203 F.3d 898, 901 (5th Cir.2000); *see also Estate of Kokernot v. Comm'r of Internal Revenue*, 112 F.3d 1290, 1294 (5th Cir.1997) ("[a] settlement agreement is a contract; mutual forbearance supplies the consideration"). Thus, the first question for the Court's determination is whether the disputed contract terms are ambiguous. *Brooks, Tarlton, Gilbert, Douglas and Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987). In Texas, this determination is a question of law, decided by looking at the contract as a whole, in light of the circumstances present when the contract was entered into. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983).

 A contract is considered ambiguous when, after applying established rules of construction, it is reasonably susceptible to more than one meaning. *Richland Plantation Co. v. Justiss–Mears Oil Co.*, 671 F.2d 154, 156 (5th Cir.1982) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951)); *see also Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). If the written instrument, however, is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393. The contract will not be found ambiguous merely because the parties have a disagreement as to its correct interpretation. *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir.1991). The Court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument, considering the entire writing, and

giving effect to all the provisions of the contract so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393.

 Applying these principles of contract construction in this case, the Court finds that the settlement agreement executed between the parties is unambiguous. It is unmistakably clear that the purpose of this agreement was to release Medical City from all potential liability related to any and all claims or causes of action which Gonzalez may have had prior to her dismissal on March 7, 1996. The Court also agrees with Defendant that by the terms encompassed within the proverbial four corners of the agreement no enforceable contract was created guaranteeing Plaintiff the right, per se, to be re-hired. *See Estate of Kokernot v. Comm'r of Internal Revenue,* 112 F.3d 1290, 1294 (5th Cir.1997). In fact, the agreement simply states that Gonzales would be "offer[ed] an equal opportunity for re-employment … for any position which she applie[d] and [was] capable of performing the mental and physical essential functions." *See* App. Def.'s Br., Exh. A2 at 2.

 The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Wright v. Christian & Smith,* 950 S.W.2d 411, 412 (Tex.App.-Houston [1st Dist.] 1997, no writ). A breach of contract, however, only occurs when a party fails or refuses to perform an act that it expressly promised to do. *Methodist Hospitals of Dallas v. Corporate Communicators, Inc.,* 806 S.W.2d 879, 882 (Tex.App.-Dallas 1991, writ denied). Therefore, regardless of Gonzales' subjective belief at the time of the agreement that she would be guaranteed employment with Defendant in any position for which she re-applied, this interpretation is not controlling in the face of the unambiguous agreement here. Where the parties' intentions are expressed unambiguously in the document, the Court construes them as a matter of law: *See 46933, Inc. v. Z & B Enters. Inc.,* 899 S.W.2d 800, 806 (Tex.App.—Amarillo 1995, writ denied); *see also Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 728 (Tex.1981). As such, the Court finds that the only reasonable interpretation of the contract here is that Medical City agreed to give Plaintiff an equal opportunity for re-employment without consideration of any previous occurrence between the parties. There is no evidence suggesting that Defendant has violated its duties under this contract as it admits that Plaintiff was and is still eligible for re-hire. Def.'s Br. at 7 n. 26. Because amendment to add this breach of contract claim would be futile, the Court will deny Plaintiff's request for leave to amend on this point.

## III. Plaintiff's ERISA Claim

Gonzales' Second Amended Original Complaint also purports to advance several claims arising out Defendant's violations of ERISA. As noted above, Plaintiff asserts that Defendant breached its fiduciary duties under the employee benefit plan when it refused to rehire her for pretextual reasons and with the intent to deprive her of rights and benefits under the insurance plan. Pl.'s Second Am. Orig. Compl. at ¶¶ 8, 22–23. Moreover, Plaintiff claims that Defendant violated 29 U.S.C. § 1140 when it refused to rehire her for exercising her rights under the plan and for seeking healthcare benefits in connection with the treatment of her work related injuries. Id. at ¶ 24.

 ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy violations, including breaches of fiduciary duty and lack of compliance with benefit plans. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct.

948, 103 L.Ed.2d 80 (1989) (citing 29 U.S.C. §§ 1132(a)).[1] Moreover, under section 1140 of ERISA, is it unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140 (1999 & Supp. 2001). Standing to bring such civil actions, however, is limited to those deemed to be participants and/or beneficiaries as those terms are defined. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1219 (5th Cir.1992); 29 U.S.C. § 1132(a) (1999 & Supp.2001). As Gonzalez does not allege that she is a beneficiary under Defendant's employee benefit plan, the Court shall focus its analysis on whether she qualifies as a participant thereunder.

ERISA defines the term "participant" to include "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7) (1999 & Supp.2001). The Supreme Court has construed this definition to cover either "(1) employees in, or reasonably expected to be in, currently covered employment ... or (2) former employees who have ... (i) a reasonable expectation of returning to covered employment or (ii) who have a colorable claim to vested benefits." *Firestone*, 489 U.S. at 117. As Gonzalez is not currently employed by Medical City, Plaintiff rests her claims on the fact that she had a "reasonable expectation of returning to work for the Defendant and [of] being covered under the insurance benefit plan." Pl.'s Reply to Def.'s Resp. ("Pl.'s Reply") at 6.

In *Shawley v. Bethlehem Steel Corporation*, 784 F.Supp. 1200, 1201 (W.D.Pa. 1992), *aff'd by* 989 F.2d 652 (3rd Cir.1993), the district court specifically dealt with a situation similar to the one in this case, where plaintiffs brought an action under 29 U.S.C. § 1140 alleging that their employer, Bethlehem Steel, discriminated against them by refusing to rehire them after a layoff because it did not wish to incur increased pension liability. After noting that ERISA did not confer standing on every person affected by a prohibited activity, the Court focused on the meaning of *"may* become eligible to receive a benefit." *Id.*, 784 F.Supp. at 1204. Plaintiffs there had argued that they had a reasonable expectation of returning to work because they were experienced in the very occupations skills sought by Bethlehem Steel. *Id.* at 1205. However, the district court held that "a hope or expectation that because of qualifications one will be selected by an employer is not equivalent to a reasonable expectation of employment." *Id.* As plaintiffs had no statutory or contractual right to be rehired, "they had no more reasonable expectation of employment than any other applicant ... [f]or a reasonable expectation of returning to employment to exist, there must be a claim of right on the part of the former employee to return to work." *Id.*[2] Similarly here,

---

**1.** Under ERISA, a civil action may be brought-
> (1) by a participant or beneficiary
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

> 29 U.S.C. § 1132(a) (1999 & Supp.2001).

**2.** In affirming the decision of the district court, the Third Circuit declined to hold that former employees may never have a "reasonable expectation" of reemployment in the absence of a contractual or statutory entitlement to reemployment. *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652, 657 (3rd Cir.1993). Nevertheless, under the facts of that case where the collective bargaining agreement ex-

the Court has already found that regardless of Gonzales' subjective belief at the time of the execution of the Compromise and Settlement Agreement that she would be guaranteed employment with Defendant in any position for which she reapplied, she had no more reasonable an expectation of returning to work for Medical City than any other applicant for those positions. *See infra.* The Court also notes that this is not the case where the employer, through its own malfeasance, has defeated the employee's standing of an employee who *would* be able to sue as a covered employee with a reasonable expectation of receiving benefits *but for* the employer's conduct. *Christopher,* 950 F.2d at 1221. Therefore, Plaintiff cannot be considered a "participant" under the plan as a former employee who has a reasonable expectation of returning to covered employment. *Firestone,* 489 U.S. at 117.[3]

In the alternative, a plaintiff may establish that he or she "may become eligible" for benefits as former employee with a colorable claim to vested benefits by establishing that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone,* 489 U.S. at 117. The requirement of a "colorable claim" means only that the plaintiff must have "an arguable claim" and not that the plaintiff must be able to succeed on that claim. *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 790 (7th Cir.1996). The requirement that the claim be "to vested benefits" means that the former employee must

have a colorable claim "to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to employee's benefit." *Id.* at 791. A benefit is not vested unless it is unconditional and legally enforceable. *Shawley,* 989 F.2d at 656.

In her Second Amended Complaint, Plaintiff generally asserts that she has been deprived of medical insurance benefits that she would have otherwise been entitled to had she been rehired by Defendant. Pl.'s Second Am. Compl. at ¶ 23. However, the language of the Compromise and Settlement Agreement signed between the parties at the time of her resignation specifically stated that in consideration of the payment of Twenty thousand dollars ($20,000.00) Gonzalez would release Medical City "from any and all claims or causes of action of any kind whatsoever ... now existing or that might arise hereinafter, directly or indirectly attributable to any occurrence ... relat[ing] to any occurrences prior to the date of the signing of this Agreement." App. Def.'s Br., Exh. A2 at 1. The agreement further stated that "no reasonable accommodation exist[ed]," and therefore Plaintiff was "no longer eligible for employment with Company." *Id.,* Exh. A2 at 1–2. Therefore, Plaintiff's voluntary resignation and acceptance of this settlement amount meant that she received all that she was entitled to under Defendant's plan. *See Washington v. Occidental Chemical Corp.,* 24 F.Supp.2d 713, 729 (S.D.Tex.1998). As such, the

---

pressly covered recall rights, and former employees were not rehired before the expiration of those rights. The Third Circuit found that plaintiffs had no reasonable expectation of reemployment. *Id.* at 658.

**3.** In the alternative, the district court in *Shawley* also found that under section 1132 of ERISA, an employer was only prohibited

from "discharging, fining, suspending, expelling or disciplining employees to interfere with their pension rights or potential pension rights," but was not prohibiting from "refusing to hire." *Shawley,* 784 F.Supp. at 1203. However, the Court finds it unnecessary to rely on this ground and does not address the merits of this argument. *See also Shawley,* 989 F.2d at 655 n. 5.

Court finds that Plaintiff cannot make a non-frivolous, colorable claim for vested benefits, and thus shall not be considered a "participant" as that term is defined under ERISA.

A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits simply does not fit within the phrase "may become eligible." *Firestone*, 489 U.S. at 118. Because González was not a participant at the time of the purported ERISA violations, she has no standing to assert any of her purported ERISA claims, and therefore any amendment of her complaint to include these causes of action must be considered futile.

### CONCLUSION

For the foregoing reasons, the Court shall and hereby DENIES the Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint.

**So ordered.**