Lori L. LEISEN, Plaintiff–Appellant,

v.

CITY OF SHELBYVILLE,
Defendant–Appellee.

No. 97–2575.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1997.

Decided Aug. 31, 1998.

W. Russell Sipes (argued), Laudig, George, Rutherford & Sipes, Indianapolis, IN, for Plaintiff–Appellant.

James S. Stephenson, Ronald J. Semler (argued), Stephenson, Daly, Morow & Kurnik, Indianapolis, IN, for Defendant–Appellee.

Before WOOD, Jr., RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Lori Leisen wanted to be a paramedic and a firefighter. For a time it looked as if she was on the way to achieving her dream, when she joined the Decatur Township Volunteer Fire Department as one of its first female members. Later, she moved to the defen-

dant City of Shelbyville's Fire Department, where she was also a pioneer as a woman firefighter. But she encountered troubles at Shelbyville that eventually proved insurmountable when she failed to gain state certification as a paramedic, which her contract required her to do within three years ·from her date of hire. After the Department fired her, she brought this lawsuit, raising claims of breach of contract, sex discrimination in violation of Title VII, and discrimination based on disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The court below granted the City summary judgment on all of Leisen's claims, and she has limited her appeal to the ADA claim. We have no doubt that she had a difficult time with the fire department, and, taking the facts as she has alleged them, we certainly do not condone everything that happened. Nonetheless, we agree with the district court that Leisen failed to show that she was a qualified person with a disability and that her alleged disability substantially limited a major life activity, and we therefore affirm.

# I

Leisen began her stint at the Shelbyville Fire Department in September 1992. Because the City had recently merged its ambulance service with its fire department, it required all new firefighters either to be certified paramedics or to achieve that status within three years of their date of hire. New firefighters were on probationary status until certification. Leisen had obtained certification as an Emergency Medical Technician (EMT) in 1988, but she was not a licensed paramedic when she was hired. Before she joined the Shelbyville Department, she had tried once to obtain paramedic ·certification through a course offered at Methodist Hospital in Indianapolis, but for some undisclosed reason did not complete the course. She had reenrolled in a course at Methodist at· the time she was hired by the Shelbyville Fire Department· but was experiencing difficulties with it. After discussing the matter with her new superiors in Shelbyville, Leisen decided to drop out of that course and to enroll in a different paramedic certification program at St. Francis Hospital, also in Indianapolis. She was dismissed from that course in Feb-

ruary 1994 for failing grades. Trying yet again, she enrolled in a program at Columbus Regional Hospital. There her performance improved, but she failed the final examination in Advanced Cardiac Life Support. Her dismissal from the Columbus program followed shortly thereafter, in May 1995.

Leisen attributed her poor record to the emotional disabilities from which she suffered. At the time she was hired, she was a single mother of two children aged about 14 and 11. Like countless single parents, she found it difficult to balance home and work life. *Cf.* Family and Medical Leave Act of 1993 § 2, 29 U.S.C. § 2601; Nancy E. Dowd, *Stigmatizing Single Parents,* 18 Harv. Women's L.J. 19 (1995); Sarah N. Gatson, *Labor Policy and the Social Meaning of Parenthood,* 22 Law & Soc. Inquiry 277, 306 (1997); Nancy E. Dowd, *Work & Family: Restructuring the Workplace,* 32 Ariz. L.Rev. 431 (1990). She was also struggling with sexual harassment and discrimination at work. She thought, for example, that there was some discrimination in the way the department handled the physical ·agility test she needed to pass in order to be hired. Ultimately the Fire Chief concluded that she had passed the test, but some of the methods she used in the test were different from those normally used by male applicants, and were questioned by her coworkers and superiors despite not having been forbidden. She was never allowed on an engine run, even though male proba-· tionary firefighters were given that opportunity. The wives of some firefighters were hostile to her, at least partially because they did not like the fact that she was sleeping in the same quarters as their husbands. (The department eventually installed partitions to address this concern.) Her male colleagues also harassed her about such intimate details as her use of the restroom facilities and her disposal of sanitary items. She gives a number of other examples in her brief, but these give the flavor of her account.

On top of the negative work atmosphere, Leisen faced stress from a variety of additional sources: her grandfather died in March 1993, her ex-husband filed a petition (which was ultimately successful) to gain custody of their children in September 1993, and

she lost her second job in early 1995, which put a strain on her financial situation. She sought and received counseling for her stress-related depression beginning in February 1994, through the City's Employee Assistance Program.

Leisen realized after her dismissal from the Columbus program that she could not meet the three-year deadline for obtaining the paramedic certification required by her contract, because paramedic programs normally take 18 months to complete. She met with Fire Chief Kenneth Scott and Director of Emergency Medical Services Stephen Schoentrup to ask them to extend the probationary period of her contract so that she could enroll in yet another paramedic course. At that meeting, Leisen explained to them how much stress she was under, though it is unclear whether she told them that she had been formally diagnosed as suffering from clinical depression (or whether she had been by that point). Scott and Schoentrup refused her request and told her they were going to recommend to the Mayor that her employment be terminated. The whole group met with the Mayor a few days later, at which time Leisen had the opportunity to explain her situation, and her "emotional difficulties," to him. After a second meeting, she was told to resign within 30 days or her case would be put before the Board of Public Works and Safety for a dismissal hearing.

Leisen then offered to resign on two conditions: that she be allowed to purchase her fire gear, and that she be given a positive recommendation. Chief Scott was unwilling to part with her on those terms, and so the promised dismissal hearing took place before the Board on August 8, 1995. Relying on copies of notes from her counseling sessions, she told the Board that she was suffering from an emotional disability and asked that it accommodate her by extending the probationary period of her contract so that she could try again to obtain paramedic certification. The Board decided against that course of action, fearing liability if she found herself in a position where she needed to give medical assistance to citizens. It voted to enforce her contract as written and to terminate her effective immediately. After her dismissal, Leisen took and passed a course to become a pharmacy technician, and her attorney states in his brief that she has now passed a paramedic certification course in Ohio.

## II

In order to prove that Shelbyville violated the ADA by terminating her, Leisen must show (1) that she was disabled as the ADA uses that term, (2) that her work performance met her employer's legitimate expectations, (3) that she was discharged or suffered some other adverse job action, and (4) that it is more likely than not that her disability (or perceived disability, or history of a disability) was the reason for the discharge. See, e.g., Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724–25 (7th Cir.1998); Weigel v. Target Stores, 122 F.3d 461, 465 (7th Cir.1997); Duda v. Board of Education of Franklin Park Public Schl. Dist. No. 84, 133 F.3d 1054, 1057–60 (7th Cir.1998). As our phrasing of these elements hints, an individual may establish a disability in any one of three ways, by showing either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); Hoeller v. Eaton. Corp., 149 F.3d 621, 624–25 (7th Cir.1998); Duda, 133 F.3d at 1058. Once the plaintiff shows she has a disability, she then must demonstrate that she was a "qualified individual" with the disability. She may do that by showing that she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); De-Paoli v. Abbott Laboratories, 140 F.3d 668, 674–75 (7th Cir.1998); Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1195 (7th Cir.1997).

The City of Shelbyville has argued three alternative grounds to support the district court's judgment: Leisen did not have a "disability," she was not a "qualified" person with a disability, and even if the first two were established, the City did not breach its duty to accommodate her. We do not reach the third of these grounds, because we find the record so clearly supports the City's position on the first two.

The district court relied exclusively on the fact that Leisen had failed to raise a genuine issue of fact on the question whether she suffered from a disability as the ADA uses that term. It found that, notwithstanding the fact that she never presented a formal medical diagnosis of a mental impairment like depression, her counselor's testimony that she suffered from "sleep problems, memory problems, crying and anxiety, suicidal ideation, [and] ... some depression" was enough to create a material issue of fact on the particular question whether she was suffering from depression. The court also assumed that depression, as a recognized mental impairment, could in some cases qualify as a "disability" under the Act. Nevertheless, the court thought, Leisen never showed that her depression "substantially limited" one of the major life activities, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2.

■ The mere fact that Leisen was having obvious difficulty in passing the course for paramedic certification does not show that she was substantially limited in the major life activity of learning, any more than the fact that a particular individual might not be able to pass a course in physics or philosophy would allow an inference that all learning activity was substantially limited. See *Knapp v. Northwestern University*, 101 F.3d 473 (7th Cir.1996) (rejecting similar claim brought under the Rehabilitation Act of 1973); *cf. Bragdon v. Abbott*, —— U.S. ——, ——-——, 118 S.Ct. 2196, 2202–05, 141 L.Ed.2d 540 (1998); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (inability to perform particular job for particular employer not enough to show substantial limitation on major life activity of working). As the City points out, Leisen successfully completed other training courses around the same time she was repeatedly failing the paramedic course; she successfully maintained her EMT certification; and she passed most of the courses in the last paramedic program even while she was suffering from all the stress she described. These undisputed facts rule out any possible finding that she was substantially limited in the activity of learning.

■ Similarly, this record contains no evidence from which a reasonable factfinder could conclude that she was substantially limited in the life activity of working. Indeed, Leisen wisely does not seem to have appealed from the district court's conclusion that this part of her case was wanting. Not everyone can be a firefighter, and Leisen showed at most that her disability interfered with her ability to perform that particular job.

■ On this record, we find in the alternative that Leisen failed to show that she was a qualified individual. Employers are entitled to define the core qualifications for a position, see *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 676–78 (7th Cir. 1998); *Webster v. Methodist Occupational Health Centers, Inc.*, 141 F.3d 1236, 1238 (7th Cir.1998), and the City of Shelbyville had reasonably determined long before Leisen appeared on the scene that its firefighters had to be qualified both to fight fires and to render paramedic assistance. Leisen tried and tried, both before she joined the Department and afterwards, to obtain paramedic certification, and she failed within the allotted time despite four attempts. Three years is a generous period of time to keep an employee on probation. In our view, the City was entitled to conclude that if she could not pass the test by then, the longer probationary period she had requested as an accommodation was not likely to be of much help either. We have noted recently that an employer does not have to change basic job qualifications just because someone is disabled. *Matthews*, 128 F.3d at 1196. Making the important assumption that Leisen's depression was genuinely a long-term disability, *cf. Weigel*, 122 F.3d at 462, 469, and not just an episodic problem that might not even qualify under the Act, see 29 C.F.R. § 1630.2(j)(2)(ii), the evidence showed only that Leisen simply could not qualify as a paramedic.

We therefore AFFIRM the judgment of the district court.