Subrina Kay WASHINGTON

v.

OCCIDENTAL CHEMICAL CORPORATION.

No. CIV. A. G–97–525.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 6, 1998.

Gary T. Lester, Attorney at Law, Houston, TX, for Subrina K. Washington, plaintiff.

Holly Harvel Williamson, Littler Mendelson, Fastiff, Tichey and Mathia, Houston, TX, Stewart Edmond Hoffer, Littler Mendelson Fastiff, Tichey and Mathia, Houston, TX, for Occidental Chemical Corporation, defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff, a female, began working for Defendant on April 29, 1991 and accepted voluntary termination in February 1996. Plaintiff brought this case on September 3, 1997, alleging discrimination (denial of transfer and wrongful discharge), sexual harassment, constructive discharge, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., discrimination (pressure to resign, preferential treatment of non-disabled employees, and hostile environment harassment) and refusal to provide reasonable accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., interference with benefits, wrongful denial of benefits, failure to provide benefit information, and breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, failure to provide leave and failure to reinstate after leave in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615, and fraudulent inducement, intentional misrepresentation, and intentional infliction of emotional distress under state law. Now before the Court is Defendant's Motion for Summary Judgment of August 14, 1998. For the reasons that follow, Defendant's Motion is **GRANTED.** Consequently, all of Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Casualty Co., 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclu-

sions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## II. *PLAINTIFF'S ABANDONED CLAIMS*

As noted above, Plaintiff initially brought this case alleging discrimination (denial of transfer and wrongful discharge), sexual harassment, constructive discharge, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* discrimination (pressure to resign, preferential treatment of non-disabled employees, and hostile environment harassment) and refusal to provide reasonable accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* interference with benefits, wrongful denial of benefits, failure to provide benefit information, and breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, failure to provide leave and failure to reinstate after leave in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615, and fraudulent inducement, intentional misrepresentation, and intentional infliction of emotional distress under state law. In her Response to Defendant's Summary Judgment Motion, Plaintiff informs the Court that she intends to withdraw her claims for Title VII retaliation, ADA hostile environment harassment, all alleged FMLA violations, and failure to provide benefit information under ERISA. In the first instance, the Court notes that Plaintiff's abandoned claims, for various legal reasons, completely lack any basis in fact and law. By abandoning them, Plaintiff obviously concedes such, and because Plaintiff fails to pursue these claims at this juncture, they are forever barred by the applicable statutes of limitation. Consequently, each and all of Plaintiff's claims alleging retaliation in violation of Title VII, hostile environment under ADA, any violations of FMLA, and failure to provide benefit information in violation of ERISA are hereby **DISMISSED WITH PREJUDICE.**

## III. *PLAINTIFF'S TITLE VII CLAIMS*

■ While employed by Defendant, Plaintiff alleges she was discriminated against because of her sex. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

> It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). To be viable, Plaintiff's Title VII claim requires a showing of intentional discrimination. The Fifth Circuit applies the burden shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to analyze claims under Title VII. *See, e.g., Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996) (applying the *McDonnell Douglas* analysis to Title VII unlawful retaliation cases); *Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 381 (5th Cir.1988) (applying *McDonnell Douglas* to a differential treatment case brought pursuant to Title VII).[1]

■ Under the now familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine Defendant's motivation in taking the challenged action. *See Burdine,* 450 U.S. at 252–54, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25. First, Plaintiff is required to establish a *prima facie* case, wherein she must establish the essential elements of her discrimination claim. If Plaintiff demonstrates a *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to Defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471,

---

**1.** *McDonnell Douglas* was refined in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

1478 n. 19 (5th Cir.1992). Defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for Defendant. *See Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir.1991). Defendant need not persuade the trier of fact that there was no intentional discrimination; it need only produce evidence on that point. *See Hicks,* 509 U.S. at 507–08, 113 S.Ct. at 2747–48. Third, once Defendant satisfies this burden, the presumption of discrimination established by Plaintiff's *prima facie* case dissolves. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. Plaintiff's burden of persuasion then arises, and she must produce evidence that Defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus. See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. Plaintiff may succeed at this juncture, either by persuading the Court that a discriminatory reason more likely motivated Defendant, or by showing that Defendant's proffered reason is unworthy of credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proof of intentional discrimination rests at all times with Plaintiff. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

▮▮▮ As this Court has repeatedly stated, summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

"[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, non-discriminatory reason for his decision." ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. The Grocers Supply Co.,* 978 F.2d 1441, 1450 (5th Cir.1992)(quoting *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 811 (5th Cir.1991) (citations omitted)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt,* 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against. *See E.E.O.C v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir.1984).

## A. *Intentional Discrimination: Denial of Transfer and Discharge*

The apparent gravamen of Plaintiff's intentional discrimination claim is that, because of her gender, Defendant refused to honor her transfer requests and ultimately discharged her. The factual basis for these allegations is not crystalline, as Plaintiff has offered numerous examples of perceived wrongs and a laundry list of legal claims without bothering to do much sorting or matching. Nevertheless, the Court will forge ahead with its assessment of this claim.

On three occasions during 1995, Plaintiff requested transfer out of the unit in which she was stationed. In two of these three requests, no position became available. However, in February 1995, an operator position opened outside of Plaintiff's area. Defendant denied Plaintiff the transfer, largely because she was needed in her unit for an upcoming "turnaround," and filled the position she had sought with a male employee.[2] Throughout this period and the early portion of the following year, Plaintiff also alleges, she suffered continuous harassment from co-workers and supervisors on the basis of her sex and substantial absences from work due to her health.[3] This period of discrimination

---

**2.** Plaintiff concedes in her deposition that her requested transfer would have worked significant logistical difficulties on Defendant. The position Plaintiff sought to fill had opened just prior to a scheduled "turnaround," a hectic period in which Defendant shuts down all of the operating equipment in a unit for necessary maintenance and repairs. Turnarounds apparently require all available personnel and place a heavy burden on the unit's technicians. Granting Plaintiff's request would have required Defendant to train her for the new position as well as locate and train a replacement for the position left vacant by her move, a proposition Defendant felt it could not afford during a turnaround. Instead, Defendant opted to keep Plaintiff in her position and shift an employee from a different area—a male—into the vacant post, thus reducing the staff demands that training two individuals for two positions would have created.

**3.** The allegations of harassment on the basis of Plaintiff's health difficulties are more properly considered in the context of Plaintiff's ADA

culminated when Defendant offered Plaintiff a severance package in return for her voluntary resignation, an offer that Plaintiff alleges was made discriminatorily.[4]

As this Court has repeatedly stated, Title VII requires a plaintiff to file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e); *Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 556 (5th Cir.1987). Plaintiff filed her EEOC complaint on December 17, 1996, well more than 300 days after Defendant's February 1995 denial of her transfer request. Thus, it is clear that Plaintiff failed to timely file her EEOC claim for this alleged violation. Moreover, although Plaintiff argues otherwise, the "continuing violation" exception does not apply here. To gain the benefit of that exception, Plaintiff must show that actionable conduct occurred both outside and inside the limitations period, but that Plaintiff, as a reasonable employee, neither knew nor should have known that the time-barred acts were discriminatory until within 300 days of filing an EEOC claim. *See Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532–34 (5th Cir.1986). Plaintiff argues that she did not realize she had been discriminated against until she met with her attorney in November 1996. That date, she argues, should be considered the date on which she

first learned of her rights for purposes of filing an EEOC complaint. This Court understands that a reasonably prudent employee will not necessarily conclude that her employer is an illegal discriminator on the basis of one at least arguably discriminatory act. *See Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1562 (5th Cir.1985). However, Plaintiff's lawsuit asserts numerous incidents in which she claims she was harassed or discriminated against because of her gender. As this Court has stated in past cases, to avoid the impact of the 300–day limitations period, a plaintiff cannot simply put her head in the sand and disregard the events occurring around her.[5] Plaintiff is charged with that information that would or should be apparent to a reasonable, prudent employee. As a matter of law, fairness and logic dictates that if gender formed the basis of the injustices allegedly suffered by Plaintiff, she should have been aware of it prior to the 300–day limitations period.

Insofar as it appears that Plaintiff is alleging that Defendant's act of *offering* her the voluntary severance package constitutes discrimination, this act too falls outside of the limitations period, as Plaintiff apparently received the offer of the package on February 15, 1996. However, because neither the evidence on record nor Plaintiff's allegations are precisely clear on this point,[6] the Court will

---

claims. Although analysis of Plaintiff's daily interactions in this regard is most relevant to her now-withdrawn hostile environment claim under the ADA, it will nonetheless resume to the extent it remains material when the Court takes up its examination of her remaining ADA claims.

4. Plaintiff's allegations on this account bear some resemblance to her separately articulated constructive discharge claim. However, where Plaintiff's constructive discharge claim seems to draw what factual support it enjoys from her allegations of Title VII hostile environment, this claim appears to assert that Defendant's *offer* of its voluntary severance package was a form of constructive discharge. Consequently, the Court will address each theory separately.

5. The Fifth Circuit has stated that the core idea of the equitable tolling theory is that:

[e]quitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated.

The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. At the same time, the mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period.

*Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1560–61 (5th Cir.1985) (quotations, citations, and footnote omitted). In *Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 604–05 (5th Cir. 1986), the Fifth Circuit rejected the plaintiff's argument that the statute of limitations in a Title VII case should not begin to run until the date of discovery of the alleged discriminatory practices.

6. Deposition testimony from both Defendant and Plaintiff indicates that Defendant made an offer on February 15. However, Plaintiff alleges in her response to Defendant's summary judgment motion that the offer came a second time on February 21, during a visit from Defendant's human resources representative to Plaintiff's home. It would appear, then, that the Court

address the question of whether this act on the part of Defendant can, as a matter of law, constitute evidence of intentional discrimination sufficient to survive summary judgment.

 If Plaintiff is alleging that Defendant's offer constitutes a disparate treatment discharge under Title VII, she must prove a prima facie case of discrimination by showing that: (1) she is a member of a protected group; (2) she was qualified for the job she held; (3) she was discharged; and (4) after her discharge, Defendant filled her position with a person who is not a member of a protected group, that is, a male. *See Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir.1992). In a situation such as this one, where the discharged employee's position requires general labor and relatively little training, the Court may determine who filled the vacancy by looking to the next person hired at the discharged employee's skill level. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 983 (11th Cir.1989). Here, Plaintiff has not identified anyone hired at her skill level after her acceptance of the severance package; thus, she has failed to satisfy her prima facie burden under Title VII.[7] Moreover, Defendant has furnished a legitimate, non-discriminatory explanation for its severance offer. The unit in which Plaintiff worked was to be part of a company-wide reorganization, a move which would ultimately involve the elimination of thirty positions throughout the plant. Plaintiff was one of four employees in the plant, two of them males, who received severance offers. Aside from several decidedly conclusory allegations in an affidavit filed after Defendant's

summary judgment motion, Plaintiff has provided no evidence that Defendant's proffered rationale for its offer was pretextual. Consequently, this claim cannot withstand summary judgment. *See Britt*, 978 F.2d at 1451. Plaintiff's claim for intentional discrimination in violation of Title VII fails, and is hereby **DISMISSED WITH PREJUDICE.**

### B. Hostile Work Environment

 Plaintiff alleges that co-workers and superiors in her unit created a hostile work environment in violation of Title VII.[8] Like her intentional discrimination claims, her hostile environment claim also fails because of the 300–day limitations period. Evidence offered by Plaintiff indicates that during the time of her employment she had made complaints to supervisors about the conduct of male co-workers. Plaintiff failed to document the dates on which she made those complaints, but they were clearly made before she left Defendant's employment, a time well outside the limitations period. Similarly, the Court may presume that Plaintiff must have realized her initial complaint had failed to quell the conduct she found objectionable when she was forced to file another complaint. For Plaintiff to now attempt to invoke the protections of the continuing violation doctrine by claiming that she did not know of her rights until she met with her counsel while at the same time attempting to bolster her allegations of hostile environment by pointing this Court's attention to those complaints strains the presumption of credibility Plaintiff has been afforded. Consequently, Plaintiff's complaint is time-barred

might have two dates from which to choose in determining the date of the offer. Were the Court to choose the latter of the two, the alleged discriminatory act of offering Plaintiff a voluntary severance package would fall just within the 300–day limitations period.

7. In an affidavit filed after Defendant submitted its motion for summary judgment, Plaintiff stated that when she dropped by the plant a few days after she resigned to sign some paperwork, she ran into a male employee she had worked with in her area of the plant. When she asked him what he was doing, her affidavit alleges, he said he "'was working in [Plaintiff's] old position in [the plant] as an operator,' or words to that effect." Taking as true Plaintiff's allegation that the male

employee, a trainer, was in fact executing Plaintiff's former responsibilities, the Court has nonetheless found before it no evidence that Defendant has ever hired anyone to take the position vacated by Plaintiff.

8. Much of Plaintiff's evidence consists of comments made by co-workers complaining of her lengthy absences from work due to her various health problems and threats from supervisors that she would be penalized because she was having difficulties learning her job, a problem apparently related to her frequent absences. As Plaintiff has withdrawn her claim of ADA hostile work environment, the Court will not consider such evidence in assessing the strength of her Title VII claim.

and is hereby **DISMISSED WITH PREJU-DICE.**

### C. Constructive Discharge

██ Plaintiff alleges that the stressful conditions she faced at work, the offer of a severance package on February 15, 1996, and the subsequent visit of Defendant's representative to her home to discuss the package, all of which culminated in Plaintiff's act of accepting the severance package on February 21, add up to a constructive discharge in violation of Title VII. Again, Plaintiff's claim fails because of the 300–day limitations period. Plaintiff signed the voluntary severance agreement on February 21, a date just within the 300–day period.[9] However, that fact alone does not invoke the continuing violation doctrine. For the doctrine to apply, Plaintiff must show in addition that she neither knew nor should have known that those acts that are time-barred were discriminatory until within 300 days of filing an EEOC claim. *See Abrams,* 805 F.2d at 532–34. As noted above, Plaintiff has offered several incidents of discrimination in support of her hostile environment claim; the same evidence cited by Plaintiff in support of that claim presumably would support her constructive discharge claim. As this Court has already stated, a plaintiff may not escape the impact of the limitations period by willfully ignoring the events occurring around her. Therefore, this claim is time-barred.

██ ] Even if Plaintiff could overcome the time bar, her constructive discharge claim fails for other reasons. In order to establish constructive discharge, Plaintiff must prove that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign. *Landgraf v. USI Film Prods.,* 968 F.2d 427, 429 (5th Cir.1992). In addition to satisfying that objective standard, moreover, Plaintiff must prove that the allegedly hostile conditions had the actual, subjective effect of producing such a compulsion to resign. *Cf. Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1271 (7th Cir.1991) (articulating a dual standard for Title VII harassment claims that considers the effect of conduct upon the particular plaintiff as well as the effect of that conduct on a reasonable plaintiff); *see also Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 718 (5th Cir.1997). Plaintiff's own deposition indicates that she accepted Defendant's severance offer because the job was too demanding and that she was afraid that if she did not accept she might have been fired for poor performance.[10] Further, for an offer such as that made by Defendant to rise to the level of constructive discharge, a plaintiff must show that the offer alters the status quo to the point that each option makes the plaintiff worse off. *Cf. Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1214 (5th Cir.1992) (noting that an ear-

---

9. The Court notes that a credible argument exists that for the purpose of the limitations period, the date of Plaintiff's alleged constructive discharge was February 15, the date on which Defendant initially made the offer of a severance package. As Plaintiff is challenging Defendant's decision to offer her the severance package, some courts would hold that her cause of action accrued when she was notified of the decision. *See, e.g. English v. Whitfield,* 858 F.2d 957, 961 (4th Cir. 1988) (stating that a cause of action accrues "on the time of the challenged conduct and its notification rather than the time its painful consequences are ultimately felt"); *Hinch v. Duncan,* 941 F.Supp. 62, 64 (W.D.Va.1996) (holding that the plaintiff's ADA cause of action accrued on the date defendant gave him the ultimatum between resuming his regular duties or accepting early retirement).

10. In the affidavit Plaintiff filed after Defendant had submitted its summary judgment motion, Plaintiff stated that she interpreted Defendant's

initial offer of the severance package as a thinly veiled threat to fire her and that she felt she had no choice after that threat but to resign. However, that affidavit contradicts Plaintiff's earlier sworn testimony. In her deposition, Plaintiff had stated that she felt she had no choice because she was afraid her admittedly poor work performance would ultimately result in her discharge. Moreover, in an unrelated personal injury lawsuit, Plaintiff had testified in court that a knee injury she suffered while grocery shopping had affected her decision to resign. This Court is troubled by the material differences between Plaintiff's deposition and her affidavit, a concern that the Fifth Circuit might share. A plaintiff "[may not] defeat summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996). Thus, to the extent that Plaintiff's affidavit contradicts her earlier sworn testimony without adequate explanation, the Court will rely on Plaintiff's deposition testimony for summary judgment purposes.

ly retirement offer cannot be constructive discharge under the ADEA unless each option it imposes on the employee makes him worse off). In this case, neither choice facing Plaintiff would have made her worse off. Defendant not only offered Plaintiff a financial package to resign, it noticed that she was several weeks shy of vesting in her benefit plan and put her on short-term disability leave for that period to "bridge" the gap between her resignation and the date of vesting. As a result, the package she received in return for resigning was substantial. Had she elected to stay, Plaintiff would have faced the risk of losing her job if she did not improve her job performance, but she has offered no evidence that turning down Defendant's offer would have put her in a worse position than she was in. For these reasons, even if Plaintiff could overcome the time bar, her constructive discharge claim cannot withstand summary judgment and is consequently **DISMISSED WITH PREJUDICE.**

### IV. PLAINTIFF'S ADA CLAIMS

Plaintiff alleges several discrimination claims under the ADA. Specifically, Plaintiff claims that Defendant discriminated against her by pressuring her to resign and by refusing to provide her reasonable accommodation for her disability. The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir. 1995); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. *See* 42 U.S.C. § 12111(8). The Fifth Circuit employs the same *McDonnell Douglas* burden-shifting approach used in Title VII claims to analyze claims under the ADA. *See Daigle v. Liberty Life Ins.,* 70 F.3d 394, 396 (5th Cir.1995). To establish a

*prima facie* case of employment discrimination under the ADA, Plaintiff must show that she:

(1) was "disabled" as that term is defined by the ADA,

(2) is qualified, with or without accommodation, for the position sought,

(3) was subject to adverse employment action, and

(4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

*Norris v. Hartmarx Specialty Stores, Inc.,* 913 F.2d 253, 254 (5th Cir.1990); *accord E.E.O.C. v. Brown & Root, Inc.,* 688 F.2d 338, 340–41 (5th Cir.1982); *E.E.O.C. v. Texas Bus Lines,* 923 F.Supp. 965, 969 (S.D.Tex. 1996). If Plaintiff succeeds in establishing a *prima facie* case, Defendant must articulate a legitimate, nondiscriminatory reason for its challenged conduct. *See Daigle,* 70 F.3d at 396. The burden then shifts back to Plaintiff to show that Defendant's proffered reason is pretextual. *See id.*

### A. Pressured Resignation

Plaintiff argues that Defendant pressured her to resign because of her alleged disability in violation of the ADA. This claim falls outside the 300–day limitations period applicable to ADA claims. An ADA cause of action for direct discharge accrues on the date on which a plaintiff was informed or had reason to know that she was discharged from employment. *See Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 589 (5th Cir.1995). The latest date on which Plaintiff conceivably could have had reason to know of her alleged discharge was either February 15, 1996, when she was informed of Defendant's severance offer, or February 21, 1996, when a human resources representative met with Plaintiff again regarding the offer. To argue that Plaintiff—who has alleged numerous examples of harassment based on her disability as well as her gender—did not become aware of this pressure to resign when Defendant made its initial offer on February 15 strains the imagination. For that reason, Plaintiff's failure to file an EEOC claim before December 17, 1996 means that Plaintiff's claim is time-barred.

Even if Plaintiff's claim was not time-barred, it would fail for other reasons. Plaintiff cannot establish a prima facie case of discrimination under the ADA because she can show neither that she has a "disability" as defined by the ADA nor that she is a "qualified individual." Under the ADA, an individual is considered to have a disability if that individual either has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or has "a record of such impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff asserts the first and third bases for ADA disability. However, she fails to provide sufficient evidence of either to withstand summary judgment.

■■■ Plaintiff initially claims that her periodic "episodes" [11] severely limit one or more of her major life activities. The Fifth Circuit has declined to hold that seizures are "disabilities" per se under the meaning of the ADA. *See Deas v. River West, L.P.,* 152 F.3d 471, 476 (5th Cir.1998) (" 'Seizures' is quite simply too broad and too amorphous a term to be used in describing a class of impairments that is to receive per se treatment."). Instead, the Court must treat seizures, and presumably seizure-like "episodes", on a case-by-case basis, determining their effect on the life of the individual affected. *See id.* The primary areas of her life that have been affected by these sporadic episodes, Plaintiff alleges, are her memory, learning, concentration, and, when she is experiencing an episode, her ability to walk, speak, see, and hear. As an initial matter, the Court must reject Plaintiff's arguments regarding her ability to function while she is in the midst of an episode. Such temporary losses of "awareness" do not constitute a substantial limitation on those major life activities. *See id.* Second, the fact that Plaintiff was having trouble learning her job at Defendant's plant does not show that she was substantially limited in the major life activity of learning, "any more than the fact that a particular individual might not be able to pass a course in physics or philosophy would allow an infer-

ence that all learning activity was substantially limited." *Leisen v. City of Shelbyville,* 153 F.3d 805, 808, No. 97–2575, 1998 WL 546980, at *2 (7th Cir. Aug. 31, 1998). Indeed, since the time of her resignation, Plaintiff has taken and passed junior college-level courses in cosmetology despite the fact that her episodes have continued. Nor has Plaintiff shown that she is substantially limited in the major life area of working. Neither the fact that Plaintiff was arguably unable to perform the particular job to which she was assigned at Defendant's plant, *see Hileman v. City of Dallas,* 115 F.3d 352, 354 (5th Cir.1997), nor the fact that she was apparently unable to work under her supervisors because of the stress caused by their reviews of her performance, *see Weiler v. Household Fin. Corp.,* 101 F.3d 519, 524 (7th Cir.1996), is sufficient to prove a substantial limitation. To be substantially limited from working, a plaintiff must be restricted from performing a class or broad range of jobs as compared to a person of similar training, skills, and abilities. *See Hileman,* 115 F.3d at 354.

■■■ Plaintiff also claims that Defendant regarded her as having a substantially limiting impairment. However, Plaintiff offers no evidence that Defendant treated her as unable to perform the work of the plant. Indeed, her own deposition testimony indicates that Defendant expected her to perform her duties as long as she was cleared to perform them by her doctors. An employer's deference to a physician's judgment is not evidence that the employer regarded an employee as disabled. *See Pryor v. Trane Co.,* 138 F.3d 1024, 1028 (5th Cir.1998). Consequently, Plaintiff has not satisfied the "disability" element of her prima facie case.

■■■ Assuming in the alternative that Plaintiff does have a "disability" as defined by the ADA, she cannot establish a prima facie case of discrimination because she cannot show that she is a "qualified individual." In determining whether a plaintiff is a "qualified individual" with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job she holds. *See Chandler v. City of Dallas,* 2

11. The episodes of which Plaintiff complains have been diagnosed by her physicians as "pseu-

doseizures" related to stress rather than full seizures that are physiological in origin.

F.3d 1385, 1393 (5th Cir.1993); *see also Daugherty,* 56 F.3d at 696. "Essential functions" are those functions that bear more than a marginal relationship to the job at issue. *See Chandler,* 2 F.3d at 1393. Physical criteria, such as the ability to operate machinery, must be necessary and substantially related to a person's ability to perform the essential functions of the job. Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function;(4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents on the job; and/or (7) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3) (1995).

▄▄▄ The Court finds that Plaintiff is not qualified for the position from which she was terminated because she cannot perform the essential function of operating heavy machinery. Although neither party has provided a detailed job description, the Court notes from the briefs that Plaintiff was hired as a chemical operator. Undertaken with a condition that causes "episodes" of what is essentially unconsciousness as well as alleged learning, concentration, and memory problems, such activity poses a safety threat to Plaintiff and those around her.[12] Plaintiff is not qualified to operate heavy machinery in a petrochemical plant as a matter of law. *See Daugherty,* 56 F.3d at 698 (holding that an individual is not qualified for a job if there is a genuine substantial risk that he could be injured or could injure others and the employer cannot modify the job to eliminate that risk); *accord Chiari v. City of League City,* 920 F.2d 311, 317 (5th Cir.1991); *see also* 29 C.F.R. § 1630.2(r).

▄▄▄ If the Court concludes that Plaintiff is not able to perform the essential functions of her job, the question then becomes whether any reasonable accommodation by the employer would enable her to perform those functions. *See Chandler,* 2 F.3d at 1394–94; *Chiari,* 920 F.2d at 315. If no reasonable accommodation would enable Plaintiff to perform the essential functions of her position, then she is not a "qualified individual" with a disability and is not afforded the protections of the ADA. *See Guneratne v. St. Mary's Hosp.,* 943 F.Supp. 771, 774 (S.D.Tex.)(Kent, J.), *aff'd* 119 F.3d 3 (5th Cir.1997). Plaintiff has offered evidence of no accommodations that Defendant could make that would allow Plaintiff to continue in her position as a heavy machinery operator in her area.[13] Moreover, Plaintiff has not only failed to argue reassignment, but she has also failed to offer evidence that she is otherwise qualified to meet the hiring criteria for any theoretical position to which she could be reassigned.[14] Plaintiff therefore fails to state a *prima facie* case as a matter of law. Consequently, Plaintiff's claim of forced resignation under the ADA is **DISMISSED WITH PREJUDICE.**

### B. Failure to Provide Reasonable Accommodation

▄▄▄ Plaintiff also alleges that Defendant failed to provide reasonable accommodation

---

**12.** The Court finds particularly instructive the case of *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090 (5th Cir.1996). In that case, the plaintiff described the requirements of a chemical process operator and then basically described his lack of concentration and other ailments, admitting that he could not fulfill those basic requirements. *See id.* at 1094.

**13.** Plaintiff alleges a separate ADA claim of failure to provide reasonable accommodation. That claim will be addressed below. The accommodation she sought, to an area of the plant she felt would be "easier" to learn and operate in, is not relevant to this inquiry. Although Plaintiff alleges that the machinery is less complicated and easier to learn in the area to which she sought transfer, it is machinery nonetheless and Plaintiff is no more "qualified" to operate it than that machinery which populates the area in which she worked before her resignation.

**14.** "The determination of qualification is twofold: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation." *Foreman,* 117 F.3d at 810; *see also* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m) (1994).

for her disability. Even if Plaintiff is disabled under the ADA, her claim falls outside the 300–day limitations period. Her final request for transfer came in December 1995. She did not file an EEOC claim until December 17, 1996, well outside the limitations period.

■■■■] Even if Plaintiff could overcome the time bar, moreover, her reasonable accommodation claim fails. Plaintiff bore the burden of suggesting a reasonable accommodation to her employer. *Taylor v. Principal Financial Group,* 93 F.3d 155, 165–66 (5th Cir.1996). Here, she requested three transfers, all during the year 1995, each time saying that she wanted to work in the "easier" area of the plant. Plaintiff has offered no evidence that she asked Defendant to accommodate her alleged disability. The ADA's duty of accommodation requires employees to seek reasonable accommodations rather than merely preferred accommodation. *See Rayha v. United Parcel Service, Inc.,* 940 F.Supp. 1066, 1070 (S.D.Tex.1996). Because Plaintiff never made it known to Defendant that she sought reasonable accommodation for her alleged disability, her claim fails as a matter of law. Therefore, Plaintiff's claim for failure to provide reasonable accommodation under the ADA is **DISMISSED WITH PREJUDICE.**

## V. PLAINTIFF'S ERISA CLAIMS

Plaintiff brings several claims under ERISA. She alleges breach of fiduciary duty under 29 U.S.C. § 1109 and 29 U.S.C. §§ 1132(a)(2) and (3), wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B), and intentional interference with ERISA benefits under 29 U.S.C. § 1140.

■■■■ The Court first notes that Plaintiff lacks standing to sue under § 1132. Although ERISA has a broad remedial purpose, its protections are limited to participants, beneficiaries, and fiduciaries

of the employee benefit plan at issue. 29 U.S.C. § 1132(a); *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 116, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989); *Christopher,* 950 F.2d at 1220; *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 473 (10th Cir.1990). Plaintiff, a former employee of Defendant, brings her claims as a "plan participant." To defeat summary judgment, therefore, she must raise an issue of fact that she is a former employee who has a reasonable expectation of returning to work, a former employee who has a colorable claim to vested benefits, or a former employee who alleges that but for an ERISA violation, she would still be covered by the plan or entitled to benefits. *See Abraham v. Exxon Corp.,* 85 F.3d 1126, 1129 (5th Cir.1996).

Plaintiff has neither a reasonable expectation of returning to work for Defendant nor a colorable claim to vested benefits. Although Plaintiff has sought reinstatement in this suit, she has never reapplied for a position with Defendant.[15] A former employee such as Plaintiff does not have a "reasonable expectation of returning to covered employment" simply because she has filed a discrimination suit seeking reinstatement. *Winchester v. Pension Committee,* 942 F.2d 1190, 1193 (7th Cir.1991). Moreover, Plaintiff has no colorable claim for vested benefits; her voluntary resignation and acceptance of the severance package means that she has received all that she was entitled to under Defendant's plan. Now she seeks a damages award, not vested benefits improperly withheld. *Cf. Christopher,* 950 F.2d at 1220–21 (holding that a retiree who accepted his retirement package had no ERISA standing).

Thus Plaintiff is left with her assertion that but for Defendant's alleged deceit she would still be working and under the coverage of Defendant's plan. However, Plaintiff's evidence does not support her allegations. In her deposition, Plaintiff stated

---

**15.** In April 1998, after the initiation of her lawsuit, Plaintiff's counsel wrote a letter to counsel for the Defendant inquiring about an opening for a chemical operator at one of Defendant's plants. Plaintiff stated in her affidavit that her counsel did not receive a response from Defendant. However, the efforts of Plaintiff's counsel in this regard are unavailing regardless of Defendant's response. A plaintiff's standing to sue under § 1132 must be decided as of the time of the filing of the lawsuit, not after the filing of the lawsuit. *See, e.g., McBride v. PLM Int'l, Inc.,* 153 F.3d 972, 976, No. 97–15433, 1998 WL 511943, at *3 (9th Cir. Aug.20, 1998).

that she left Defendant's employment knowing that she would lose certain benefits, that Defendant's human resources representative explained the consequences of leaving her position, and that Defendant's alleged deception had nothing to do with her decision to accept the severance package. Because Plaintiff can present no issue of fact showing that she is a "plan participant," she lacks standing to sue under 29 U.S.C. § 1132. Accordingly, Plaintiff's claims for breach of fiduciary duties and wrongful denial of benefits are hereby **DISMISSED WITH PREJUDICE.**

Plaintiff also claims that Defendant intentionally interfered with her right to receive ERISA benefits in the future in violation of 29 U.S.C. § 1140. That section makes it unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a participant" for exercising a right provided under ERISA or "for the purpose of interfering with the attainment" of a right provided by ERISA. 29 U.S.C. § 1140; *Christopher,* 950 F.2d at 1221. Defendant concedes that Plaintiff has standing to sue under § 1140. Therefore, the only issue this Court must consider is whether Plaintiff has produced some evidence that Defendant had a specific intent to interfere with the attainment of a right to which Plaintiff may have become entitled. *See Van Zant v. Todd Shipyards Corp.,* 847 F.Supp. 69, 72 (S.D.Tex.1994).

 To survive summary judgment on this claim, Plaintiff must do more than simply show that she was treated differently than other employees. *See McGann v. H & H Music Co.,* 946 F.2d 401, 406 (5th Cir. 1991); *Van Zant,* 847 F.Supp. at 72. Plaintiff must show that Defendant specifically intended to interfere with her attainment of a right to which she may have become entitled. *Van Zant,* 847 F.Supp. at 72. The only act of Defendant to which Plaintiff points as

evidence of a specific intent to interfere with her attainment of benefits was Defendant's decision to terminate the short term disability benefits it had placed her on after she accepted the offer of severance. However, the short term benefits Plaintiff was receiving were no more than a mechanism Defendant employed to "bridge" Plaintiff's years of service so that her retirement benefits would vest.[16] As Plaintiff had no real entitlement to these benefits, her allegations assert at most that Defendant's conduct merely deprived her of the opportunity to accrue additional benefits. Proof of such deprivation will not suffice to avoid summary judgment against claims under § 1140. *See Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir. 1988). Therefore, Plaintiff's claim for intentional interference with benefits under 29 U.S.C. § 1140 is **DISMISSED WITH PREJUDICE.**

## VI. FRAUD AND INTENTIONAL MISREPRESENTATION

 Plaintiff asserts claims for state law fraud and intentional misrepresentation, alleging that Defendant tricked Plaintiff into accepting voluntary resignation by misrepresenting her options under its short term and long term disability plans. To withstand summary judgment, Plaintiff must present an issue of material fact that would show that Defendant made a misrepresentation as to a past or existing fact, that the misrepresentation was material to the transaction, that Defendant made the misrepresentation for the purpose of inducing Plaintiff to take a certain action, and that Plaintiff reasonably relied upon the misrepresentation to her detriment. *Kansa Reinsurance v. Congressional Mortgage Corp.,* 20 F.3d 1362, 1375 (5th Cir.1994).

 As an initial matter, though, this Court must address Defendant's argument that these claims are preempted by ERISA.

---

**16.** When Plaintiff accepted the severance package, Defendant's human resources representative realized that Plaintiff was three weeks shy of her fifth anniversary with the company. Under Defendant's defined contribution retirement plan, Plaintiff would not vest in the plan until she had completed her fifth year of employment. Failure to vest, of course, would mean that Plaintiff would not be eligible to receive Defendant's matching contributions to her retirement account. Accordingly, the HR representative "bridged" Plaintiff by placing her on short term disability for three weeks and beginning the series of severance payments at the conclusion of that period.

Section 514(a) of ERISA states that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). Courts have interpreted ERISA's preemption clause broadly, observing that its deliberatively expansive language was designed "to establish pension plan regulation as exclusively a federal concern." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). State laws that "relate to" ERISA plans, even if they are not specifically designed to have that effect or do so only indirectly, are preempted. *Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir.1996). This preemption may extend to state law fraud claims. *See Smith v. Texas Children's Hospital*, 84 F.3d 152, 156–57 (5th Cir.1996) (holding a fraudulent inducement claim preempted to the extent that the plaintiff alleged entitlement to benefits she gave up based on employer's fraudulent statements). However, not every state law fraud claim bearing some connection to an ERISA plan will be preempted. Where a plaintiff's claim "fundamentally affects [the] employer-employee relationship," only "incidentally affects the beneficiary-administrator relationship with the plan," and continues to exist despite being stripped of its link to the plan, it is not preempted. *See Rokohl*, 77 F.3d at 130; *Hook v. Morrison Milling Co.*, 38 F.3d 776, 782–84 (5th Cir.1994).

The critical question is thus whether Plaintiff would have a fraud claim if Defendant's benefit plan was not implicated at all. Plaintiff argues that the lost ERISA benefits she is seeking are only a small and incidental part of the total harm worked on her by Defendant's alleged trickery; the greatest losses sustained by Plaintiff included the loss of her wages, her right to work overtime and receive overtime pay, the right to enter the plant as an employee, the right to associate with the other plant employees, and the right to attend company picnics and similar functions. However, Plaintiff's argument misses the point made by the Fifth Circuit in *Rokohl*. Whether or not Plaintiff could still allege damages if ERISA benefits were not at stake is irrelevant. What is relevant is the basis of the fraud Plaintiff alleges. The

gravamen of Plaintiff's fraud complaint, as best the Court can tell, is that Defendant mislead her regarding the effect that signing the severance package would have on her benefits. Uncoupling the existence of the ERISA benefits from Plaintiff's claims would delete the subject of Defendant's alleged material misrepresentation. Consequently, Plaintiff's claims would, in the words of the Fifth Circuit in *Rokohl*, "cease to exist." *Rokohl*, 77 F.3d at 130. Plaintiff's claims for fraud and intentional misrepresentation are preempted by ERISA. Those claims are therefore **DISMISSED WITH PREJUDICE.**

## VII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, Plaintiff alleges that Defendant's actions in discriminating against her constitute intentional infliction of emotional distress under state law. To prevail on such a claim, Plaintiff must establish that Defendant acted intentionally or recklessly, that the conduct was "extreme and outrageous," that the actions of Defendant caused Plaintiff emotional distress, and that the emotional distress suffered by Plaintiff was severe. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993); *see also Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). The standard for establishing liability on an intentional infliction claim is a demanding one. Liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621; *see also Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991). Plaintiff has proffered evidence of multiple occasions where co-workers or supervisors criticized her for her frequent absences or her poor job performance, sometimes in insulting tones. While this Court does not condone such treatment, it must note that it falls well short of the high standard required to maintain a claim for intentional infliction of emotional distress. *See Cochrane v. Houston Light & Power Co.*, 996 F.Supp. 657, 662–66 (S.D.Tex.

1998). Accordingly, Plaintiff's claim for intentional infliction of emotional distress cannot withstand summary judgment. This claim is therefore **DISMISSED WITH PREJUDICE.**

## VIII. CONCLUSION

The Court sympathizes with Plaintiff in this case. She has suffered through years of health problems that have defied certain diagnosis and have caused her to miss a great deal of time at work. Those problems in turn have compounded the difficulties she has faced as a woman struggling to make a living in a male-dominated industry where patronizing and discourteous behavior were more the norm than the exception. However, the large number of generally ambiguous claims asserted by Plaintiff in this case does not conceal the fact that none of the harms she alleges are redressable by this Court. Plaintiff simply has not offered facts sufficient to support her various claims beyond the summary judgment stage. For these reasons, Defendant's Motion for Summary Judgment is **GRANTED.** Each of Plaintiff's claims is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses occurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a *compelling* showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**THIS IS A FINAL JUDGMENT.**